72921-61

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SANDRA C. FUIT, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| NORTHERN ILLINOIS MEDICAL ) | |
| CENTER d/b/a NORTHWESTERN ) | |
| MEDICINE HUNTLEY HOSPITAL, ) | |
| Defendant. ) | |

## COMPLAINT AT LAW

NOW COMES Plaintiff, Sandra C. Fuit, by and through her attorneys, Tracy A. McGonigle of Prime Law Group, LLC and Kristin D. Tauras of McKenna Storer, pursuant to Title VII (42 U.S.C. sec. 2000 E, et seq.), 42 U.S.C. § 1981, the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., and the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 et seq., and complains of Defendant, Northern Illinois Medical Center d/b/a Northwestern Medicine Huntley Hospital ("NIMC") as follows:

### Jurisdiction

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 for all issues arising under Federal law. Jurisdiction arises under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 E, *et seq*.) and 42 U.S.C. § 1212, et seq.

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for all issues arising under the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 et seq.

3. Plaintiff has exhausted her remedies; she filed an underlying claim with the Equal Employment Opportunity Commission (EEOC), received a Right to Sue Letter dated June 24,

2021, and within 90 days of the determination letter that she received from the EEOC, she filed this lawsuit. (Ex. A, EEOC Charge of Discrimination, hereinafter "Charge"; Ex. B. EEOC determination) Plaintiff requests a jury demand.

### Parties

4. Plaintiff is a resident of Illinois and a registered nurse. Plaintiff suffers from Bi-Polar Disorder, Depression, and Obsessive-Compulsive Disorder (OCD).

5. Defendant is a non-profit corporation, incorporated under the laws of the State of Illinois and is in good standing.

### Statement of Facts

6. Plaintiff began her employment with NIMC in 2015, and was employed through December 23, 2019.

7. From June 1, 2019 through December 23, 2019, Plaintiff was subjected to direct acts of discrimination based upon her disabilities of Bi-Polar Disorder, Depression, and OCD, as well as a hostile work-place environment that discriminated against the disabled.

8. During that time, as a result of the below described discriminatory practices, Plaintiff was forced to take medical leave, to use her acquired time off, and then was forced to use her unpaid time off. After approximately six weeks, Plaintiff was permitted to go back to work.

9. During that time, Plaintiff was also required to undergo a medical evaluation and drug test (that turned up negative), a test that, based on information and belief, was not required of other similarly employed nurses.

### Plaintiff Met and/or Exceeded her Employer's Standards

10. As of March of 2019, Plaintiff had worked for Respondent for 4.5 years and had a stellar record.

11. In March of 2018, she received a glowing recommendation from Karen Swanson, BSN, CMSRN, Manager of Operations, Oncology/Medical/Surgical Department of Centegra Health System (Defendant's predecessor in name).

12. Plaintiff was the recipient of 4 Daisy awards, which are awards given to nurses from patients whom they feel did an excellent job, giving excellent patient care.

13. On June 18, 2019, Plaintiff's mentor, Elena RN, shadowed Plaintiff for the day and informed her that she had improved from when she had started, and that she did not see anything major that Plaintiff had to correct and told Plaintiff that she did a good job.

### Disability Discrimination Directed Toward Plaintiff

14. Plaintiff was discriminated against on the basis of her disability.

15. In approximately June of 2019, Plaintiff was subjected to harassment in the form of bullying by her charge nurse, Rebecca Ohlenroth, her manager, Jenny Kreuger, and her co-worker, Nurse Ellen.

16. Plaintiff was subjected to harassment as set forth below.

17. Nurse Ellen made false, humiliating public allegations in front of patients that Plaintiff was abusing methamphetamines because of visible injuries on Plaintiff's person, as well as issues Plaintiff had with her stool, when Plaintiff was actually suffering a ringworm infection.

18. Plaintiff was forced to defend herself in front of patients by stating that she was not on methamphetamines, but rather treating larvae in one of her wounds from the ringworm infection and was likewise forced to publicly discuss embarrassing issues related to her stool.

19. This caused additional emotional distress to Plaintiff.

20. Plaintiff complained to her manager, Jenny Kreuger.

21. Despite knowing of her disability, her manager disregarded her complaints and instead forced her to take unpaid time off rather than take corrective action against her co-worker and/or supervisor.

22. Plaintiff was forced to use a portion of her paid time off, was required to undergo drug testing upon return, and was required to receive a medical evaluation prior to returning. Plaintiff complied and passed all medical evaluations.

### Disparate Treatment Directed Toward Plaintiff

23. Around that time, Plaintiff was wrongfully accused of improperly incurring overtime on timesheets from May 19 through June 15, 2019. This was untrue.

24. Plaintiff disproved this false allegation and proved that she incurred no overtime from her regularly scheduled shifts. She had incurred overtime on the June 15th paycheck only because she had to attend a meeting, and covered a shift because the hospital was short-staffed. Plaintiff demonstrated that, on her June 1, 2019 paycheck, she had incurred no overtime.

25. Based on information and belief, no other similarly situated employees were wrongfully accused of improperly incurring overtime.

26. Plaintiff was wrongfully accused of improperly checking in and checking out of the time recording machine at work, and received warnings claiming she improperly did so.

27. Co-workers without disabilities who improperly checked in and out of the time recording machine did not receive the same warnings.

28. Charge Nurse Ohlenroth failed to address, investigate, or prevent this harassment of Plaintiff.

29. In May of 2019, Plaintiff complained to her manager, Jenny Kreuger, that she was being bullied and harassed by her Charge Nurse, Rebecca Ohlenroth, because of her disabilities.

Plaintiff also informed Ms. Kreuger that her co-worker, Nurse Ellen, had harassed her publicly in front of patients during her shift of using methamphetamines because of the injuries Plaintiff had due to her ringworm infection, and having to defend herself publicly.

30. Ms. Kreuger failed to investigate Plaintiff's claims about Nurse Ellen's false allegations of methamphetamine use or Ohlenroth's discrimination.

### Incidents of Retaliation after Reporting Disability Discrimination

31. After reporting discrimination, Plaintiff was intentionally given a much heavier and more difficult patient load than other nurses on her floor who did not suffer from disabilities. On May 20, 2019, Plaintiff overheard her manager, Jenny Kreuger, tell another nurse on her shift that the more difficult patient had been assigned to Plaintiff so that the other nurse would be "okay."

32. On May 27, 2019, Kreuger called Plaintiff into her office. During that in-person meeting, Plaintiff informed Kreuger that she had been diagnosed with bipolar disorder, depression, and OCD at the age of 16 years. Ms. Fuit was 26 at the time of the meeting. Plaintiff also informed managers in Defendant's Human Resource Department, as well as Defendant's corporate doctor.

33. After the meeting, Plaintiff was put on leave, had to undergo a Fitness for Duty screening, see her personal physician, take a drug test, and obtain a clear to work note.

34. Plaintiff complied and tested negative for any drug use.

35. On June 12, 2019, Plaintiff was assigned 5 patients, while other nurses on her floor working her shift only received 3 patients and 1 patient, respectively.

36. Defendant disciplined Plaintiff for tardiness.

37. Plaintiff had physician's notes excusing tardiness or absences.

38. The time clock machine was not working properly when Plaintiff checked in.

39. Defendant was aware of the issues with the time clock machine.

40. Defendant continued to discipline Plaintiff despite her proving that she accurately checked in or had excused absences.

41. Plaintiff's participation in disciplinary and corrective action plans were a pretext for her termination for reporting discrimination based on her disability.

42. Defendant improperly terminated Plaintiff at the end of December 2019.

### Evidence of Hostile Work Environment

43. Plaintiff was placed under constant stress of false, humiliating, public accusations of her real and/or perceived medical condition and disability.

44. Plaintiff was forced to defend herself from false, humiliating, public accusations regarding her real and/or perceived medical condition and disability.

45. Plaintiff was forced to defend herself from false, humiliating, public accusations of drug use.

46. Plaintiff was forced to defend herself from false accusations of tardiness and unexcused absences from work.

47. Plaintiff was otherwise forced to defend herself because of her disabilities and/or perceived medical condition and disabilities.

### Evidence of Defendant's Knowledge of Plaintiff's Disabilities

48. Defendant was aware of Plaintiff's disabilities.

49. In May of 2019, Plaintiff had complained to her manager, Jenny Kreuger, that she was being harassed because of her Bi-Polar Disorder, Depression, and OCD

50. Plaintiff also informed managers in Defendant's Human Resources Department, as well as Defendant's corporate doctor of her disabilities prior to her discipline and/or termination.

51. Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

52. Defendant was aware that Plaintiff was qualified to perform the essential functions of her job.

### Defendant Failed to Take Appropriate Remedial Action

53. Defendant knew, or should have known, of the employees' and/or supervisor's acts, and failed to take appropriate remedial action.

54. Despite being informed of the treatment, Defendant did nothing to remediate the harassment and the harassment continued.

### Plaintiff had a Disability as Defined by the ADA

55. Bipolar disorder, depression, and Obsessive-Compulsive Disorder are disabilities recognized and protected by the Americans with Disabilities Act, 42 USC 1212, et seq. (ADA).

### COUNT I
### VIOLATION OF THE AMERICANS WTH DISABILITIES ACT
### 42 USC 12112, et seq.

1-56. Paragraphs 1 through 55 are hereby incorporated by reference as and for Paragraphs 1 through 55 of this Count I.

57. The Americans with Disabilities Act (ADA), 42 U.S.C.S § 12112, et seq., protects individuals with physical and mental disabilities from discrimination in many situations, including the workplace.

58. The ADA protects individuals with disabilities including bipolar disorder, depression, and OCD. Under the ADA, 42 U.S.C.S. § 12112 et seq., it is unlawful for an employer to discriminate against a qualified individual with a disability because of the disability with regard to Job Applications, Page 2 of 11 - procedures, the hiring, advancement or discharge of employees,

7

employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C.S. § 12112(a).

59. Plaintiff is disabled within the meaning of the ADA.

60. Plaintiff is qualified to perform the essential functions of her job with or without reasonable accommodations.

61. Plaintiff suffered an adverse employment action as a result of her disability.

WHEREFORE, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and costs.

### COUNT II
### RETALIATION WHILE EMPLOYED - TITLE VII (42 U.S.C. § 2000E-3(A))

1-56. Paragraphs 1-55 as stated herein are incorporated by reference as and for Paragraphs 1-55 of this Count.

57. Plaintiff engaged in a statutorily protected activity by having objected to Defendant's unlawful employment practices in violation of Title VII, and was given negative reviews, placed unjustly on a performance improvement plan, and ultimately was terminated.

58. As a result of the retaliation, Plaintiff is entitled to lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees. Due to the extreme hostile environment, Plaintiff does not seek reinstatement.

WHEREFORE, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and costs.

**COUNT III**
**DISCRIMINATION BASED ON DISABILITY –**
**TITLE VII, ADA (42 U.S.C. § 1212, et seq.)**
<u>**HOSTILE ENVIRONMENT**</u>

1-56.   Paragraphs 1-55 are incorporated herein by reference as and for Paragraphs 1-55 of this Count.

57.   Plaintiff is a member of a class protected by the statute and she has been subjected to a hostile work environment, and Defendant took adverse action on account of Plaintiff's membership in the protected class.

58.   Plaintiff is entitled to reinstatement, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

59.   Due to the extreme hostile environment, Plaintiff does not seek reinstatement.

WHEREFORE, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

**COUNT IV**
**DISABILITY DISCRIMINATION BASED ON THE ILLINOIS**
**HUMAN RIGHTS ACT (IHRA), 775 ILCS 5/1-101 et seq.**
<u>**DISCRIMINATION**</u>

1-56.   Paragraphs 1-55 are incorporated herein by reference as and for Paragraphs 1-55 of this Count IV.

57.   The Illinois Human Rights Act prohibits employment practices that discriminate on the basis of a person's physical or mental disability, if the disability is unrelated to the person's ability to perform the job in question.

9

58. Plaintiff is a member of a class protected by the statute and she has been subjected to a hostile work environment, and Defendant took adverse action on account of Plaintiff's membership in the protected class.

59. Defendant knew of the disability and failed to make reasonable accommodations and/or stop the harassment.

60. Plaintiff is entitled to reinstatement, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

61. Due to the extreme hostile environment, Plaintiff does not seek reinstatement.

WHEREFORE, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

**COUNT V**
**DISABILITY DISCRIMINATION BASED ON THE ILLINOIS**
**HUMAN RIGHTS ACT (IHRA), 775 ILCS 5/1-101 et seq.,**
**HOSTILE ENVIRONMENT**

56. Paragraphs 1-55 are incorporated herein by reference as and for Paragraphs 1-55 of this Count.

57. The Illinois Human Rights Act prohibits employment practices that discriminate on the basis of a person's physical or mental disability, if the disability is unrelated to the person's ability to perform the job in question.

58. Plaintiff is a member of a class protected by the statute and she has been subjected to a hostile work environment, and Defendant took adverse action on account of Plaintiff's membership in the protected class.

59. Defendant knew of the disability and failed to make reasonable accommodations and/or stop the harassment.

60. Plaintiff is entitled to reinstatement, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

61. Due to the extreme hostile environment, Plaintiff does not seek reinstatement.

WHEREFORE, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

Respectfully submitted,

By: /s/ Kristin Tauras
One of Her Attorneys


**Plaintiff Requests Jury Demand**

Kristin Tauras – ARDC # 6216004
McKenna Storer
33 N. LaSalle Street, Suite 1400
Chicago, Illinois 60601
Telephone: 312.558.3900
Facsimile: 312558.8348
ktauras@mckenna-law.com
federal@mckenna-law.com

Tracy McGonigle – ARDC #6216521
Prime Law Group, LLC
747 South Eastwood Avenue
Woodstock, Illinois 60098
Telephone: 815.338.2040 X 119
Facsimile: 815.338.0526
Email: tmcgonigle@primelawgroup.com

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>440-2020-06274 |
|---|---|---|

ILLINOIS DEPARTMENT OF HUMAN RIGHTS and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**SANDRA C FUIT** | Home Phone<br>**(224) 308-3511** | Year of Birth |
|---|---|---|

Street Address / City, State and ZIP Code
**4404 WEST SHAMROCK LANE APT 1B, MCHENRY, IL 60050**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>**NORTHWESTERN MEDICINE MCHENRY** | No. Employees, Members<br>**15 - 100** | Phone No.<br>**(224) 308-3511** |
|---|---|---|

Street Address / City, State and ZIP Code
**4201 W. MEDICAL CENTER DRIVE, MCHENRY, IL 60050**

| Name | No. Employees, Members | Phone No. |
|---|---|---|

Street Address / City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **06-01-2019**   Latest: **12-23-2019**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**I began my employment with Respondent in 2015. My most recent position was Registered Nurse. In 2019, I informed Respondent of my disability and subsequently, I was forced on an unpaid leave of absence and a portion of my paid time off was used, in which I was forced to undergo drug testing and obtain a medical evaluation. After nearly six weeks, I was allowed to return to work. Subsequently, I was issued two written reprimands and discharged.**

**I believe I was discriminated against because of my disability and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Sandra Fuit on 08-13-2020 04:31 PM EDT** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT B

EEOC Form 161 (11/2020)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Sandra C. Fuit<br>c/o Tracy Mcgonigle, Esq.<br>Prime Law Group, LLC.<br>747 S. Eastwood Drive<br>Woodstock, IL 60098 | From: | Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|---|---|

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2020-06274 | Robert Shelton,<br>Investigator | (312) 872-9725 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/msd*       6/24/2021

Enclosures(s)     **Julianne Bowman,**
                  **District Director**        *(Date Issued)*

cc:    **Elizabeth Naccarato
Program Manager - HR Compliance & Policy
NORTHWESTERN MEMORIAL HEALTHCARE
541 North Fairbanks Court, suite 1700
Chicago, IL 60611**

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.