72921-61

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| SANDRA C. FUIT, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21 CV 50411 |
| ) | |
| NORTHERN ILLINOIS MEDICAL ) | Judge Iain D. Johnston |
| CENTER d/b/a NORTHWESTERN ) | Magistrate Judge Lisa A. Jensen |
| MEDICINE MCHENRY HOSPITAL, ) | |
| Defendant. ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW**

NOW COMES Plaintiff, Sandra C. Fuit, by and through her attorneys, Tracy A. McGonigle of Prime Law Group, LLC and Kristin D. Tauras of McKenna Storer, pursuant to Title VII (42 U.S.C. sec. 2000 E, et seq.), 42 U.S.C. § 1981, the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., and the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 et seq., and complains of Defendant, Northern Illinois Medical Center d/b/a Northwestern Medicine McHenry Hospital ("NIMC") as follows:

**Jurisdiction**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 for all issues arising under Federal law. Jurisdiction arises under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 E, *et seq.*) and 42 U.S.C. § 1212, et seq.

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for all issues arising under the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 et seq.

3. Plaintiff has exhausted her remedies; she filed an underlying claim with the Equal Employment Opportunity Commission (EEOC), received a Right to Sue Letter dated June 24,

1

2021, and within 90 days of the determination letter that she received from the EEOC, she filed this lawsuit. (Ex. A, EEOC Charge of Discrimination, hereinafter "Charge"; Ex. B. EEOC determination.) Plaintiff requests a jury demand.

## Parties

4. Plaintiff is a resident of Illinois and a registered nurse. Plaintiff suffers from Bi-Polar Disorder, Depression, and Obsessive-Compulsive Disorder (OCD).

5. Defendant is a non-profit corporation, incorporated under the laws of the State of Illinois and is in good standing.

## Statement of Facts

6. Plaintiff began her employment with NIMC in 2015, and was employed through December 23, 2019.

7. From June 1, 2019 through December 23, 2019, Plaintiff was subjected to direct acts of discrimination based upon her disabilities of Bi-Polar Disorder, Depression, and OCD, as well as a hostile work-place environment that discriminated against the disabled.

8. During that time, as a result of the below described discriminatory practices, Plaintiff was forced to take medical leave, to use her acquired time off, and then was forced to use her unpaid time off. After approximately six weeks, Plaintiff was permitted to go back to work.

9. During that time, Plaintiff was also required to undergo a medical evaluation and drug test (that turned up negative), a test that, based on information and belief, was not required of other similarly employed nurses.

## Plaintiff Met and/or Exceeded her Employer's Standards

10. As of March of 2019, Plaintiff had worked for Respondent for 4.5 years and had a stellar record.

11. In March of 2018, she received a glowing recommendation from Karen Swanson, BSN, CMSRN, Manager of Operations, Oncology/Medical/Surgical Department of Centegra Health System (Defendant's predecessor in name).

12. Plaintiff was the recipient of 4 Daisy awards, which are awards given to nurses from patients whom they feel did an excellent job, giving excellent patient care.

13. On June 18, 2019, Plaintiff's mentor, Elena RN, shadowed Plaintiff for the day and informed her that she had improved from when she had started, and that she did not see anything major that Plaintiff had to correct and told Plaintiff that she did a good job.

### **Disability Discrimination Directed Toward Plaintiff**

14. Plaintiff was discriminated against on the basis of her disability.

15. In approximately June of 2019, Plaintiff was subjected to harassment in the form of bullying by her charge nurse, Rebecca Ohlenroth, her manager, Jenny Kreuger, and her co-worker, Nurse Ellen.

16. Plaintiff was subjected to harassment as set forth below.

17. Nurse Ellen made false, humiliating public allegations in front of patients that Plaintiff was abusing methamphetamines because of visible injuries on Plaintiff's person, as well as issues Plaintiff had with her stool, when Plaintiff was actually suffering a ringworm infection.

18. Plaintiff was forced to defend herself in front of patients by stating that she was not on methamphetamines, but rather treating larvae in one of her wounds from the ringworm infection and was likewise forced to publicly discuss embarrassing issues related to her stool.

19. This caused additional emotional distress to Plaintiff.

20. Plaintiff complained to her manager, Jenny Kreuger.

21. Despite knowing of her disability, her manager disregarded her complaints and instead forced her to take unpaid time off rather than take corrective action against her co-worker and/or supervisor.

22. Plaintiff was forced to use a portion of her paid time off, was required to undergo drug testing upon return, and was required to receive a medical evaluation prior to returning. Plaintiff complied and passed all medical evaluations.

### Disparate Treatment Directed Toward Plaintiff

23. Around that time, Plaintiff was wrongfully accused of improperly incurring overtime on timesheets from May 19 through June 15, 2019. This was untrue.

24. Plaintiff disproved this false allegation and proved that she incurred no overtime from her regularly scheduled shifts. She had incurred overtime on the June 15th paycheck only because she had to attend a meeting, and covered a shift because the hospital was short-staffed. Plaintiff demonstrated that, on her June 1, 2019 paycheck, she had incurred no overtime.

25. Based on information and belief, no other similarly situated employees were wrongfully accused of improperly incurring overtime.

26. Plaintiff was wrongfully accused of improperly checking in and checking out of the time recording machine at work, and received warnings claiming she improperly did so.

27. Co-workers without disabilities who improperly checked in and out of the time recording machine did not receive the same warnings.

28. Charge Nurse Ohlenroth failed to address, investigate, or prevent this harassment of Plaintiff.

29. In May of 2019, Plaintiff complained to her manager, Jenny Kreuger, that she was being bullied and harassed by her Charge Nurse, Rebecca Ohlenroth, because of her disabilities.

4

Plaintiff also informed Ms. Kreuger that her co-worker, Nurse Ellen, had harassed her publicly in front of patients during her shift of using methamphetamines because of the injuries Plaintiff had due to her ringworm infection, and having to defend herself publicly.

30. Ms. Kreuger failed to investigate Plaintiff's claims about Nurse Ellen's false allegations of methamphetamine use or Ohlenroth's discrimination.

## Incidents of Retaliation after Reporting Disability Discrimination

31. After reporting discrimination, Plaintiff was intentionally given a much heavier and more difficult patient load than other nurses on her floor who did not suffer from disabilities. On May 20, 2019, Plaintiff overheard her manager, Jenny Kreuger, tell another nurse on her shift that the more difficult patient had been assigned to Plaintiff so that the other nurse would be "okay."

32. On May 27, 2019, Kreuger called Plaintiff into her office. During that in-person meeting, Plaintiff informed Kreuger that she had been diagnosed with bipolar disorder, depression, and OCD at the age of 16 years. Ms. Fuit was 26 at the time of the meeting. Plaintiff also informed managers in Defendant's Human Resource Department, as well as Defendant's corporate doctor.

33. After the meeting, Plaintiff was put on leave, had to undergo a Fitness for Duty screening, see her personal physician, take a drug test, and obtain a clear to work note.

34. Plaintiff complied and tested negative for any drug use.

35. On June 12, 2019, Plaintiff was assigned 5 patients, while other nurses on her floor working her shift only received 3 patients and 1 patient, respectively.

36. Defendant disciplined Plaintiff for tardiness.

37. Plaintiff had physician's notes excusing tardiness or absences.

38. The time clock machine was not working properly when Plaintiff checked in.

39. Defendant was aware of the issues with the time clock machine.

5

40. Defendant continued to discipline Plaintiff despite her proving that she accurately checked in or had excused absences.

41. Plaintiff's participation in disciplinary and corrective action plans were a pretext for her termination for reporting discrimination based on her disability.

42. Defendant improperly terminated Plaintiff at the end of December 2019.

### Evidence of Hostile Work Environment

43. Plaintiff was placed under constant stress of false, humiliating, public accusations of her real and/or perceived medical condition and disability.

44. Plaintiff was forced to defend herself from false, humiliating, public accusations regarding her real and/or perceived medical condition and disability.

45. Plaintiff was forced to defend herself from false, humiliating, public accusations of drug use.

46. Plaintiff was forced to defend herself from false accusations of tardiness and unexcused absences from work.

47. Plaintiff was otherwise forced to defend herself because of her disabilities and/or perceived medical condition and disabilities.

### Evidence of Defendant's Knowledge of Plaintiff's Disabilities

48. Defendant was aware of Plaintiff's disabilities.

49. In May of 2019, Plaintiff had complained to her manager, Jenny Kreuger, that she was being harassed because of her Bi-Polar Disorder, Depression, and OCD

50. Plaintiff also informed managers in Defendant's Human Resources Department, as well as Defendant's corporate doctor of her disabilities prior to her discipline and/or termination.

51. Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

52. Defendant was aware that Plaintiff was qualified to perform the essential functions of her job.

### **Defendant Failed to Take Appropriate Remedial Action**

53. Defendant knew, or should have known, of the employees' and/or supervisor's acts, and failed to take appropriate remedial action.

54. Despite being informed of the treatment, Defendant did nothing to remediate the harassment and the harassment continued.

### **Plaintiff had a Disability as Defined by the ADA**

55. Bipolar disorder, depression, and Obsessive-Compulsive Disorder are disabilities recognized and protected by the Americans with Disabilities Act, 42 USC 1212, et seq. (ADA).

### **COUNT I**
### **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
### **42 USC 12112, et seq.**

1-56. Paragraphs 1 through 55 are hereby incorporated by reference as and for Paragraphs 1 through 55 of this Count I.

57. The Americans with Disabilities Act (ADA), 42 U.S.C.S § 12112, et seq., protects individuals with physical and mental disabilities from discrimination in many situations, including the workplace.

58. The ADA protects individuals with disabilities including bipolar disorder, depression, and OCD. Under the ADA, 42 U.S.C.S. § 12112 et seq., it is unlawful for an employer to discriminate against a qualified individual with a disability because of the disability with regard to Job Applications, Page 2 of 11 - procedures, the hiring, advancement or discharge of employees,

7

employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C.S. § 12112(a).

59. Plaintiff is disabled within the meaning of the ADA.

60. Plaintiff is qualified to perform the essential functions of her job with or without reasonable accommodations.

61. Plaintiff suffered an adverse employment action as a result of her disability.

WHEREFORE, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and costs.

**COUNT II**
**RETALIATION WHILE EMPLOYED – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 USC 12203(a) and 12112, et seq. and VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT (IHRA) 775 ILCS 775 ILCS 5/6-101 and 775 ILCS 5/1-101 et seq.**

1-56. Paragraphs 1-55 as stated are incorporated by reference as and for Paragraphs 1-55 of this Count.

57. Plaintiff engaged in a statutorily protected activity by having objected to Defendant's unlawful employment practices in violation of the ADA and the IHRA, and was given negative reviews, placed unjustly on a performance improvement plan, and ultimately was terminated.

58. As a result of the retaliation, Plaintiff is entitled to lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees. Due to the extreme hostile environment, Plaintiff does not seek reinstatement.

59. Plaintiff exhausted her remedies under the IHRA. She filed an underlying claim with the EEOC, received a Right to Sue Letter dated June 24, and within 90 days of the determination letter that she received from the EEOC, she filed this lawsuit. (Ex. A, EEOC Charge

of Discrimination, hereinafter "Charge"; Ex. B. EEOC). She has notified the Illinois Department of Human Rights of its tandem agency's authorization.

**WHEREFORE**, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and costs.

### COUNT III
**HOSTILE WORK ENVIRONMENT – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ADA (42 U.S.C. § 12112, et seq.)**

1-59. Paragraphs 1-59 are incorporated by reference as and for Paragraphs 1-59 of this Count.

60. Plaintiff is a member of a class protected by the statute and she has been subjected to a hostile work environment, and Defendant took adverse action on account of Plaintiff's membership in the protected class.

61. Plaintiff is entitled to reinstatement, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

62. Due to the extreme hostile environment, Plaintiff does not seek reinstatement.

**WHEREFORE**, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

### COUNT IV
**DISABILITY DISCRIMINATION BASED ON THE ILLINOIS HUMAN RIGHTS ACT (IHRA), 775 ILCS 5/1-101 et seq.**
<u>**DISCRIMINATION**</u>

1-56. Paragraphs 1-55 are incorporated herein by reference as and for Paragraphs 1-55 of this Count IV.

9

57. The Illinois Human Rights Act prohibits employment practices that discriminate on the basis of a person's physical or mental disability, if the disability is unrelated to the person's ability to perform the job in question.

58. Plaintiff is a member of a class protected by the statute and she has been subjected to a hostile work environment, and Defendant took adverse action on account of Plaintiff's membership in the protected class.

59. Defendant knew of the disability and failed to make reasonable accommodations and/or stop the harassment.

60. Plaintiff is entitled to reinstatement, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

61. Due to the extreme hostile environment, Plaintiff does not seek reinstatement.

WHEREFORE, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

## COUNT V
## DISABILITY DISCRIMINATION BASED ON THE ILLINOIS HUMAN RIGHTS ACT (IHRA), 775 ILCS 5/1-101 et seq., HOSTILE ENVIRONMENT

56. Paragraphs 1-55 are incorporated herein by reference as and for Paragraphs 1-55 of this Count.

57. The Illinois Human Rights Act prohibits employment practices that discriminate on the basis of a person's physical or mental disability, if the disability is unrelated to the person's ability to perform the job in question.

58. Plaintiff is a member of a class protected by the statute and she has been subjected to a hostile work environment, and Defendant took adverse action on account of Plaintiff's membership in the protected class.

59. Defendant knew of the disability and failed to make reasonable accommodations and/or stop the harassment.

60. Plaintiff is entitled to reinstatement, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

61. Due to the extreme hostile environment, Plaintiff does not seek reinstatement.

WHEREFORE, Plaintiff requests that this Court grant the Plaintiff lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

Respectfully submitted,

By: /s/ Kristin Tauras
One of Her Attorneys

**Plaintiff Requests Jury Demand**

Kristin Tauras – ARDC # 6216004
Tracy McGonigle – ARDC #6216521
McKenna Storer
33 N. LaSalle Street, Suite 1400
Chicago, Illinois 60601
Telephone: 312.558.3900
Facsimile: 312558.8348
ktauras@mckenna-law.com
tmcgonigle@mckenna-law.com
federal@mckenna-law.com